[No. 13915.   In Bank. — June 18, 1892.]

## A. C. DIETZ, APPELLANT, *v.* THE MISSION TRANSFER COMPANY, RESPONDENT.

LEASE — OPTION TO PURCHASE — PURCHASE OF PART BY LESSEE — RIGHTS OF OTHER PURCHASERS FROM LESSOR. — Where, by the terms of a lease, the lessee had the option to purchase the land within thirty days after notice by the owners of the land, and while he was in possession of the land under the lease, and entitled to purchase, the owners of the land, by a deed of grant, bargain, and sale, conveyed a part of the land to him, the fact that the grantors had, prior to the deed but subsequent to the lease, entered into an agreement for the sale of the property to other parties, could not deprive him of the benefit of his agreement and conveyance, or entitle them to any greater rights in the portion of the tract sold to him than those named in the exceptions and reservations contained therein.

ID. — EXCEPTIONS IN DEED — RIGHT TO BORE FOR OIL. — Where the deed to the lessee of part of the tract expressly excepted from its operation "all oils, petroleum, asphaltum, and other kindred mineral substances," and contained a reservation of "the right to erect machinery, sink wells, bore, tunnel, dig for, work on, and remove the same from the premises," etc., a purchaser of the rights of the grantor, although not having the right to use the land conveyed to the lessee for the purpose of pumping or storing oil found in other portions of the tract, has the right to go upon such part of the tract to develop it, and to tunnel and dig to ascertain whether any oil croppings exist, although there are none on the surface, being held to a reasonable exercise of the right to develop the oil.

ID. — EJECTMENT — JUDGMENT IN PRIOR ACTION AGAINST LESSEE — RES ADJUDICATA — DIFFERENT SUBJECT-MATTER. — A judgment for the plaintiffs in an action between the grantors of the lessee and their other grantee on the one part, and the lessee and others on the other part, wherein the plaintiffs alleged that the lessee's rights under his lease

had ceased by failure to purchase within the time provided for, and sought to restrain him from hindering the grantee plaintiff from entering upon the land to explore, develop, and extract oil therefrom, and in which the only thing considered and determined was the right of the lessee to retain possession of the land under his lease for the purposes therein specified, is not a bar to an action of ejectment by such lessee against the grantee plaintiff, in which the question as to the lessee's right to the possession as owner in fee of a part of the tract is involved, and in which he makes no claim of right to extract oil from the land, and does not dispute the right of the defendant to occupy the land for the purpose of taking oil, if oil exists.

ID. — DEED OF FIXTURES — IMPLIED RIGHT TO OPERATE FIXTURES AND OCCUPY LAND. — A deed from the lessee and another person, of grant, bargain, and sale, conveying to the other grantee of the lessor all their right, title, and interest in and to "all the buildings, tanks, derricks, pipes, pipe lines, fixtures, and all other personal property whatsoever," situated upon any portion of the tract, conveyed to the grantee not merely the pipes, tanks, derricks, etc., as personal property, but carried with it the right to operate the same in the manner they theretofore had been operated by the grantee, and also the right to occupy sufficient land for the purpose of such use and operation.

APPEAL from a judgment of the Superior County of Ventura County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Noble Hamilton, Joseph A. Joyce,* and *R. M. F. Soto,* for Appellant.

*Charles Fernald, John J. Boyce,* and *Garber, Boalt & Bishop,* for Respondent.

PATERSON, J. — On December 20, 1881, Carpentier and Steinbach were the owners in fee of a tract of land consisting of about twenty thousand acres, in Ventura County, and known as the Ex-Mission rancho. On that day they entered into a contract of lease with the plaintiff herein, by the terms of which plaintiff was to have the possession of the land, together with the buildings and improvements thereon, and the right to use all necessary land for the purpose of digging, boring for, developing, and taking oils, petroleum, asphaltum and other kindred substances, and the right of way over the lands of the ranch for roads, where necessary for the purpose of transporting substances to market. The

lessors retained the right to pasture their cattle and sheep on the land, and to farm and cultivate all that portion of the premises not occupied for the purposes aforesaid. The lease was to continue for the term of three years from the first day of January, 1882. It was provided that in case the lessors should at any time sell the premises, or the right to take oil, petroleum, and kindred substances, the contract should "*ipso facto* terminate six months from a written notice of such sale," but that the plaintiff should not in any event be required to quit and deliver up possession of the premises before the first day of July, 1883. Dietz was to have the option of purchasing the property and privileges leased to him for the sum of one hundred and fifty thousand dollars, at any time within three years from the date of the lease. While the owners reserved the right to sell the lands with or without the rights referred to, to any other person at any time within the three years, it was provided that they should first give Dietz thirty days' notice for the exercise of his option to take the property at one hundred and fifty thousand dollars, or any less sum which they might be willing to take. If he did not purchase within thirty days after the notice, then the owners were to have the privilege of selling to any other person. On October 25, 1882, Carpentier and Steinbach notified Dietz that they had an offer of one hundred thousand dollars for the property and rights named in his lease, which offer they were willing to take, and that he must within thirty days of the notice exercise the option reserved to him in the lease. It does not appear whether Dietz made any reply to this notice. On November 23, 1882, Carpentier and Steinbach made, executed, and delivered to Dietz a deed, grant, bargain, and sale in form, conveying, in consideration of the sum of two thousand four hundred dollars, about four hundred acres of the twenty-thousand-acre tract above referred to. This deed excepted from the operation of the grant "all oils, petroleum, asphaltum, and other kindred mineral substances," and

contained a reservation of "the right to erect machinery, sink wells, bore, tunnel, dig for, work on, and remove the same from the said premises, together with the right of way over and through any and all parts of said premises, for the purpose of going to and coming from said works, and transporting machinery, tools, implements, and supplies for said works, and of transporting said substances to a market, and the right to lay pipes to conduct oil, and the right to dispose of said substances, and of transferring to their grantees thereof the same rights as are herein reserved to the parties of the first part; but not to destroy or injure any crops growing upon or any improvements on said premises, such as buildings, trees, vines, roads, inclosures, without making just compensation for such injury or destruction.    Reserving also to the parties of the first part the right of way for a road or roads over and across said premises, for the use of tenants or vendees of adjoining and other lands of said rancho."    The party referred to in the notice of October 25th, as having made an offer of one hundred thousand dollars, was F. J. Whaley, with whom Carpentier and Steinbach had entered into an agreement on October 21st, by the terms of which they agreed to sell to him the property and rights described in the lease to Dietz, for the sum of one hundred thousand dollars, " subject to the pre-emption right of Alfred C. Dietz, as contained in the indenture of lease between Horace W. Carpentier and Rudolph Steinbach, dated the twentieth day of December, A. D. 1881." By the terms of this agreement, the purchaser was to pay ten thousand dollars when possession was delivered on July 1, 1883, and the balance in certain installments named, but it was provided that "the title of the said right is to be retained by the first party until performance."    On November 25, 1882, Carpentier and Steinbach notified Whaley that they had given Dietz the notice required in the lease to him on October 25th, that the thirty days allowed him in which to exercise his option had expired November 24th, and that he had

elected not to purchase. On December 12, 1882, Dietz was notified that Carpentier and Steinbach had sold the property and rights described in his lease, and that his lease would, therefore, terminate on July 1, 1883, at which time they would require of him to quit and surrender up the possession of the premises. The deed from Carpentier and Steinbach to Dietz was recorded November 27, 1882. Whaley conveyed all his right, title, and interest to the defendant on October 28, 1882, and the latter has thus far complied with all the terms of the agreement with Carpentier and Steinbach.

The first matter presented for consideration is the question as to the effect of these conveyances and notices. It is claimed by respondent, that, " on the twenty-fourth day of October, 1882, and before the deed to Dietz of November 23, 1882, the Mission Transfer Company had acquired, through the assignment of the contract with Whaley, the general right over the *entire tract* to the mineral oils and asphaltum in the ground, to the right of entry upon the whole tract to mine and explore for oils and asphaltum, with the right of way over every part of it for the transportation of the oils, and every other right which was necessary to the enjoyment of the interest which they had acquired. They therefore had this right before the deed to Dietz was made, and whatever estate or interest in the particular four-hundred-acre tract he obtained by that deed was subject to the rights of the Mission Transfer Company, under the agreement of Carpentier and Steinbach with Whaley." We cannot agree with respondent in this contention. Under his agreement with Carpentier and Steinbach, and the notice which they gave him, Dietz had the right to purchase the property at any time before November 25, 1882. The thirty days' notice was served on him on October 25, 1882. This gave him to and including November 24th in which to exercise his option. While he was thus in possession of the land under his lease, and entitled to purchase, the owners of the land, by a deed of grant, bargain, and sale, conveyed a part of the

rancho to him for the consideration of two thousand four hundred dollars. So long as the owners of the land were willing to convey four hundred acres of the entire tract, nobody could be heard to complain, so far as Dietz was concerned. If Whaley or the Transfer Company had any ground of complaint, it was against Carpentier and Steinbach. The contract between these parties could in no way bind Dietz. He became the owner of the four hundred acres before the expiration of the time within which he was required to exercise his option, and the fact that his grantors had entered into an agreement for the sale of an interest in the property to Whaley could not deprive him of the benefit of his agreement and his conveyance. We do not see how the defendant can be heard to complain, unless it be held that plaintiff was bound to purchase the entire tract of twenty thousand acres, or none at all, — a proposition which cannot be maintained.

Our conclusion, therefore, on this branch of the case is, that the defendant acquired no right by virtue of its purchase from Carpentier and Steinbach to use the land in controversy for the purpose of operating an oil plant, in developing, transporting, and storing oil found on other portions of the rancho. Its right in this regard is acquired solely through the exceptions and reservations found in the deed to plaintiff, and the conveyance to it by Carpentier and Steinbach. It has the right to go upon the land in controversy under those exceptions and reservations for the purposes therein named, but its operations under the terms of the deed must be confined to the four-hundred-acre tract. The plaintiff's grant conveyed to him the absolute title to the four-hundred-acre tract, with the exception of the oil, asphaltum, and other kindred mineral substances therein, and the right reserved to erect machinery, sink wells, etc., *on said tract.*

It is contended by appellant that the exceptions and reservations in the deed to Dietz do not give the defendant the right to go upon the four-hundred-acre tract for

the purpose of developing oil, and that, as the evidence shows there is no oil on that portion of the ranch, the defendants have no right there; but the plain meaning of the language used in the deed does not support this theory.    The terms, " sink wells, bore, *tunnel, dig for,*" certainly mean the right to develop.    The fact, if it be a fact, that there are no oil croppings on the surface, will not prevent defendant from digging, tunneling, etc., to ascertain whether any exist below the surface.    How much tunneling, boring, digging, etc., may be done by the defendant for the purpose of developing oil cannot be determined in advance.    " All that can be said in that regard is, that they would be held to a reasonable exercise of the right to develop the [oil] water."    (*Painter* v. *Pasadena L. & W. Co.*, 91 Cal. 86.)

The defendant pleaded in bar of plaintiff's cause of action a judgment entered in the superior court of the city and county of San Francisco, on June 30, 1884, in an action between Steinbach, Carpentier, and the Mission Transfer Company, plaintiffs, and Dietz, Hill, and Adams, defendants.    The plaintiffs in that action alleged all the facts we have stated above in relation to the transactions between the various parties, excepting the fact of the conveyance from Carpentier and Steinbach to Dietz, and claimed that Dietz had lost all rights under his lease from Carpentier and Steinbach by failure to purchase within the thirty days following the notice given, and by virtue of the provisions of the lease requiring him to quit and deliver possession on July 1, 1883, but nevertheless he was unlawfully holding, and claiming the right to hold, possession of the land for the purpose of extracting oils, etc., and although demand had been made he had refused to permit the respondent to enter upon the land for the purpose of exploring, developing, or extracting the oil therefrom.    In his answer to this claim, Dietz denied that he had lost his rights under the lease, and insisted that he was still entitled to retain possession of the lands for the purposes named therein.    ·The court's findings of fact were confined to

the matters averred in the complaint and denied in the
answer, and its conclusion of law was, that " said grant
or license to said Dietz, and all the rights and privileges
thereunder, did actually and *ipso facto* cease and deter-
mine on the first day of July, 1883." It is true the
court decreed that the plaintiff was entitled to judgment
restraining the defendants from hindering, delaying, or
preventing the Transfer Company " from entering into
and occupying all and singular the lands and premises,
and from erecting and constructing thereupon buildings,
tanks, pipe lines, machinery, and other apparatus, and
from drilling and sinking wells," but this provision
must be read in connection with the issues made, and
the court's findings of fact and conclusion of law. If
the plaintiffs in that action had alleged in general terms
the ultimate fact of their right to the possession of the
land for the purposes named, the contention of respond-
ent would doubtless be sound. This they did not do,
but preferred to set forth specifically the facts upon
which Dietz had acquired the right to possession of the
land for the purpose of exploring for oil, and the rea-
sons why such right had ceased to exist. Dietz was not
bound to, and did not in fact attempt to, go beyond the
case made by the complaint. The only thing consid-
ered and determined in the case was the right of Dietz
to retain possession of the land under his lease from
Carpentier and Steinbach, and for the purposes therein
specified. In this case another and entirely different
question is presented, namely, plaintiff's right to the
possession as owner in fee of a part of the tract. The
question as to his right to extract oil from the land, or
any part of it, is not here involved; he makes no such
claim; nor does he dispute the right of the respondent
to occupy any portion of the land for the purpose of
taking oil therefrom, provided oil exists therein. He
insists that no oil exists in this four-hundred-acre tract
owned by him, and for that reason the respondent has
no right to be there at all.

On May 29, 1886, Dietz and Hill, by a deed of grant,

bargain, and sale, conveyed to the respondent all their right, title, and interest in and to "all the buildings, tanks, derricks, pipes, pipe lines, fixtures, and all other personal property whatsoever," situated upon any portion of the rancho. Upon a further consideration of the terms of this instrument, and the circumstances under which the deed was made, we are convinced that it conveyed to the defendant not merely pipes, tanks, derricks, buildings, etc., as personal property, but that the transfer necessarily carried with it the right to operate the same in the manner they theretofore had been operated by the defendant. That such was the intention of the parties we think is clear from the language of the deed. "Granted, bargained, sold," are words usually employed in instruments conveying real property. The instrument speaks of pipes, *pipe lines, and fixtures*. The term *pipe line* evidently means something different from *pipes*, and conveys the idea of a line of pipe running upon or in the earth, carrying with it the right to the use of the soil in which it is placed. The use of the phrase "other personal property" does not militate against the construction we place upon the deed. Some of the things mentioned are shown to be affixed to the soil and a part of the realty. The phrase referred to covers simply personal property not previously mentioned, but of the same kind or nature. It certainly would not be contended that the words "other personal property" would include the cattle and other stock running on the rancho.

In view of what has just been said, it is unnecessary for us to consider the question of title by adverse possession. The deed referred to conveyed the plant as it existed on the four-hundred-acre tract in 1886, and it is not claimed that any right by adverse possession to any additional property has been acquired since that time. The evidence shows that the plant which defendant now claims the right to operate is substantially the same as it was on May 29, 1886.

Our conclusions upon the whole case are: 1. That the conveyance from Carpentier and Steinbach to defendant

does not invest the latter with authority to use the land in controversy for the purpose of pumping or storing oil found in other portions of the twenty-thousand-acre tract, but that the interest acquired by plaintiff through his deed from Carpentier and Steinbach is subject to the right of the defendant on the four-hundred-acre tract only to take and do the things named in the exceptions and reservations contained in the deed of November 23, 1882; 2. That the judgment of June, 30, 1884, is not a bar to plaintiff's cause of action; 3. That by the deed of May 29, 1886, from Dietz and Hill to defendant, the latter became the owner of all the "buildings, tanks, derricks, pipes, pipe lines, fixtures," on the land in controversy, and all other personal property of a similar nature connected therewith, and the right to occupy sufficient land for the use of said property, for the purposes and in the manner it had theretofore been operated by the defendant; 4. That defendant is not confined in its operations to portions of the land in controversy where oil is found upon the surface only, but that it is entitled to go upon any portion of the land, and use any reasonable means to enjoy the exceptions and reservations named in the deed of November 23d.

Upon the evidence the court properly found that plaintiff could not maintain ejectment; but the decree awards to the defendant greater rights and privileges than it is entitled to. As some of the findings, however, are not warranted by the evidence, we could not, without making new findings, direct a modification of the judgment.

The judgment and order are reversed.

McFarland, J., Sharpstein, J., and Garoutte, J., concurred.

Harrison, J., concurring. —I concur in reversing the order and judgment appealed from, and I also concur in the opinion of Mr. Justice Paterson, except in that portion thereof wherein he holds that the deed to the re-

spondent of May 29, 1886, carried with it the right to operate and use the property therein conveyed for the purpose and in the manner it had been theretofore operated by the defendant, and also the right to occupy sufficient land for the purpose of such use and operation. The instrument itself purports to be nothing more than a transfer of the interest of the plaintiff and Hill "in and to the buildings, tanks, derricks, pipes, pipe lines, fixtures, and all other personal property" that was then or at any other time upon the twenty-thousand-acre tract of land. There is nothing in the instrument which requires a construction to be given to it that will include more than is expressed in the words of the description, nor is there any evidence of surrounding circumstances which justifies an inference that the parties to the instrument had in their minds any other property than that which is described, or that it was their intention to transfer any right in addition to the property therein specified. With the exception of " pipe lines," the terms of description used in the instrument are peculiarly applicable to personal property, and the subsequent clause, " and all other personal property," shows that only personal property was intended. A " building," without any qualification or other term of description, is essentially personal property, and in this state especially it is frequently the subject of sale and transfer as personal property. Whether in any instance it is other than personal property by virtue of its being attached to the soil is a question of fact to be determined from the circumstances of that case. (*Miller* v. *Waddingham*, 91 Cal. 379.) Even if any of the buildings that were upon the land in question had been so affixed, they would have passed by the subsequent term " fixtures," which was doubtless used to obviate the possibility of any dispute concerning the character of the property transferred. Although the title to fixtures will pass under a grant of the realty, it is not the rule that the realty or a right to its use will pass under a transfer of the fixtures. In the absence of any other evidence,

the use of the term "fixtures" in the instrument would
be limited to the fixtures themselves, and would imply
that they were to be severed and taken away.  A sale of
the "trees" upon a tract of land is not a transfer of the
land itself, and gives to the grantee merely the permis-
sion to go upon the land for the purpose of removing
the trees; and the transfer of buildings or other im-
provements upon land is not within the statute of frauds,
and may be made by parol.

. The use, in the instrument, of the words "grant, bar-
gain, and sell," does not vary the construction to be
given to it.  These terms are expressly limited therein
to the "interest" of the grantors in the property de-
scribed, and the other terms "transfer and set over,"
which are used therein instead of the word "convey,"
have reference exclusively to personalty.

It is held that a conveyance of a "mill" or a "wharf"
or a "well" or a "bridge" will, without the use of any
term expressly descriptive of real estate, pass the land
connected therewith, upon the principle that in such a
case the land is an essential element of the thing de-
scribed, and passes by the use of a term which is suffi-
ciently comprehensive to include it.  So, too, when a
conveyance is made of a "dwelling-house" or a "barn,"
and it is shown that the parties to the transaction were
negotiating in reference to the *place*, including the land
on which the structure was situated, it is held that the
land will pass.  Such construction rests upon the prin-
ciple that when land is occupied or improved by a
structure designed for a particular purpose, which com-
prehends a practical enjoyment and use of the land, and
in which the land is of subordinate consideration to that
of the purpose, a term which is descriptive of the pur-
pose to which the land is appropriated will be as apt for
a conveyance of the land as would a description of the
land itself.  (*Johnson* v. *Rayner*, 6 Gray, 110.)

There is nothing, however, in the term "building,"
or in any of the terms used in the present instrument,
which can be said to be descriptive of any purpose or

use in which the land is an essential element for its enjoyment; nor does the record in the present case disclose the nature or character of the " buildings " or " fixtures" intended by the transfer, or throw any light upon the circumstances attending the transaction; and in the absence of such evidence, there is no warrant for giving to the terms of the instrument any other than their ordinary construction. It does appear, however, from the record that Dietz had been the lessee from Carpentier and Steinbach of the entire tract of twenty thousand acres, and had made improvements upon the portions outside of the four-hundred-acre tract involved in this controversy, and it is as consistent to suppose that the terms used were intended to have reference to the improvements outside of the four-hundred-acre tract. It also appears that after the deed to Dietz of this four-hundred-acre tract, the defendant had erected the improvements in question within the boundaries of that tract. Whether these structures were of such a character as to become fixtures, and thus belong to Dietz, or whether they were of a temporary character, does not appear, but the use of the term " fixtures " in the instrument of transfer, in addition to the term " buildings," would imply that the buildings themselves had not become fixtures.

It is not shown whether the pipe lines were upon the ground or imbedded beneath its surface; nor whether or to what extent they were used as conduits for oil from without the four-hundred-acre tract. If these pipe lines were part of a continuous conduit, or were imbedded beneath the surface of the ground, the effect of their conveyance would be to create an easement in the ground for their use, and to authorize their continuance in the same position for such use, with the right to the defendant to enter upon the land for necessary repairs, but the transfer to it of the other property named in the instrument gave to it no right to occupy the land for its use, and the plaintiff had the right to maintain this action

for the purpose of removing the defendant from the land held by it for the purposes of such use.

De Haven, J., concurring. — I concur in the foregoing opinion of Mr. Justice Harrison.