[Civ. No. 26052. Second Dist., Div. Two. Nov. 13, 1962.]

F. GLADE WALL et al., Plaintiffs and Appellants, v. SHELL OIL COMPANY et al., Defendants and Respondents.

Pray, Price & Williams, James C. Hollingsworth and Henry F. Walker for Plaintiffs and Appellants.

Sheridan, Orr, Barnes, Duval & Benton, George R. Pfeiffer, Arthur G. Bowman and Donald J. Burdine for Defendants and Respondents.

HERNDON, J.—This is an appeal from a judgment whereby the respective rights of the parties in certain lands in

Ventura County were determined and declared. Defendants and cross-complainants, respondents herein, were granted injunctive relief. The judgment denied plaintiffs and cross-defendants, appellants herein, damages for, or injunctive relief against, alleged trespasses committed by respondents.

Appellants are the owners of approximately 17 acres of land in Ventura County, hereinafter referred to as "Parcel A," subject to certain exceptions with reference to the mineral and oil rights therein, which will be discussed more fully in the course of this opinion. Respondents are two oil companies, hereinafter referred to as "Shell" and "Mobil," when necessary to distinguish between them, who own various leasehold rights and estates in the minerals and oil in larger property divisions which include or relate to appellants' Parcel A.

A brief history of the chain of title of the parties to their respective property interests is required as a basis for an understanding of the factual and legal issues here involved. Prior to December 24, 1864, one George G. Briggs was the owner in fee simple absolute of a large tract of land known as the "Rancho Santa Paula y Saticoy." On that date, Briggs deeded to Edward W. Haskell "all the beds, deposits, lodes, veins and ledges of minerals of every description, and all the petroleum and asphaltum situate in upon and within the premises known as the 'Rancho Santa Paula y Saticoy,' . . . together with all such rights and privileges as are necessary to give to the said [Haskell] the full benefit of this conveyance with the exclusive right to explore, dig and sink wells, pits and shafts for the purpose of obtaining, extracting and appropriating said minerals and substances wherever situate in and upon said premises, and with the right to erect houses for workmen and all buildings required for smelting, refining and working the same. . . ."

By various mesne conveyances, all made subsequent to the Briggs-Haskell deed, appellants' ownership of "Parcel A" is derived from George G. Briggs. By similar mesne conveyances, respondents' interests are derived from Edward W. Haskell.

Respondents are the coowners under certain oil and gas leases of the oil rights in a parcel of land known as "Saticoy Land," which contains approximately 590 acres, and an adjoining parcel known as "South Land" which contains approximately 1500 acres. Appellants' Parcel A is located entirely within the "Saticoy Land." In addition, respondent Mobil owns a one-half interest in the oil rights in a parcel of land known as "General Petroleum Land," which contains

approximately 3800 acres. Both the "Saticoy Land" and "South Land" lie within the boundaries of the "General Petroleum Land" which is part of, and situated within, the exterior boundaries of the still larger area heretofore referred to as the "Rancho Santa Paula y Saticoy."

Counsel for both parties apparently cooperated in developing a "Joint Pre-Trial Statement" which greatly simplified the task of the trial court by settling most of the factual issues and, in effect, reduced the question to one basic legal issue. As expressed by respondents, in the joint pretrial statement, the determinative question is as follows:

"Where the owner in fee simple of a large tract of land (Rancho Santa Paula y Saticoy) conveys to another, by a deed duly recorded, the oil and mineral estate in the entire tract, together with the right to use the surface of the entire tract for the purpose of developing the oil and mineral estate so conveyed, can such owner-grantor or his successors in interest, by subsequent subdivision of the surface of the large tract and by conveyances of the smaller parcels to others, who take with notice of the prior conveyance of the oil and mineral estate, limit or restrict the use to be made of the surface by the prior grantee of the oil and mineral rights in the entire parcel or by the successors in interest of said prior grantee?"

As expressed by appellants, the basic question is this: "[Under such circumstances], must the owner of one subdivision or one area of the surface bear all or a substantial part of the burden of the use of the surface for production, or at least a portion of the total burden which is proportionately greater than his surface bears to the entire surface?"

There were a number of minor issues, but on this appeal they have been substantially reduced and will be taken up individually hereinafter. The factual situation which brought this problem before the court arose from the placement by respondents of 17 wells on the Saticoy Land, four of which are situated on appellants' Parcel A. All four of these wells are bottomed outside the boundaries of Parcel A, but within the boundaries of Saticoy Land, and three of these wells have producing intervals both within and without the boundaries of Parcel A, and one has no producing interval therein. Also, respondents have placed a road, pipelines and other related facilities upon appellants' Parcel A which serve not only the wells located on Parcel A, but also the others located on the Saticoy Land as a whole.

It was conceded by appellants that their crops and trees

had not been damaged by these facilities, which apparently were placed upon a rough and undeveloped section of Parcel A. However, they contended that the very use of the surface of their land to serve wells and other operations beyond the boundaries thereof constituted a trespass.

The trial court decided against this contention and held that, as coowners of the oil rights in the Saticoy Land, respondents might use any portion thereof to effectuate their rights without regard to any subsequent divisions of the surface ownership. Since the court also found this was the extent of the use which actually had been made at the time of trial, any question as to appellants' right to recover damages for trespass or to injunctive relief was necessarily resolved against them. However, in declaring the rights of the parties as sought in appellants' complaint and as broadened by respondents' cross-complaint, the court further ruled that the respondents could also use the surface of the Saticoy Land, including Parcel A, to serve their facilities on the South Land, and that respondent Mobil could use all of the General Petroleum Land, including Parcel A, in the enforcement of its rights therein. These determinations constitute appellants' first assignment of error.

■ It is settled law in California that the owner in fee of real property may transfer the oil and mineral rights in his property apart from his remaining general estate in the land. (*Standard Oil Co.* v. *John P. Mills Organization,* 3 Cal.2d 128, 132 [43 P.2d 797]; *Carlson* v. *Lindauer,* 119 Cal.App.2d 292, 302 et seq. [259 P.2d 925].) ■ The grantee or lessee of such interest acquires a *profit à prendre* in gross, a right to remove a part of the substance of the land. This *profit à prendre* vests in the transferee a present estate, an interest in land. (*Callahan* v. *Martin,* 3 Cal.2d 110, 122 [43 P.2d 788, 101 A.L.R. 871].)

■ "The *profit à prendre,* whether it is unlimited as to duration or limited to a term of years, is an estate in real property. If it is for a term of years, it is a chattel real, which is nevertheless an estate in real property, although not real property, or real estate. [Citation.] ■ Where it is unlimited in duration, it is a freehold interest, an estate in fee and real property or real estate. ■ Thus, although the oil and gas in place doctrine is rejected, interests in oil rights which are estates in real property may be granted separate and apart from a grant of surface title. The grantee of the profit has a right to such possession of the surface as is neces-

sary and convenient for the exercise of the profit, but he has no general estate in the surface." (*Dabney-Johnston Oil Corp. v. Walden*, 4 Cal.2d 637, 649 [52 P.2d 237].)

It is equally well settled that the owner of the oil and mineral estate has a right to enter upon the surface of the property and make such use thereof as is reasonably required for the enjoyment of his estate therein, even if such extensive rights were not spelled out as clearly as they were in the Briggs-Haskell deed in the present case. "If the oil and gas lessee is not granted exclusive possession of the surface by the terms of the lease, he has nevertheless a right to such possession as is necessary and convenient for the exercise of the profit, which, in fact, may preclude any other surface possession." (*Callahan* v. *Martin, supra,* 3 Cal.2d 110, 122.)

Thus, it is apparent that prior to any division of the Rancho Santa Paula y Saticoy, Haskell, or his successors in interest, would have been entitled to use any and all parts of the entire tract reasonably necessary to give them the full benefit of the rights and estate conveyed. Therefore, as indicated by the parties, the fundamental issue is whether the subdivision of the surface ownership that followed this initial conveyance in any way diminished these rights of the grantee.

Neither appellants nor respondents have cited us to any decision in California or elsewhere that expressly determines this specific issue. Appellants contend that the holdings in *Dietz* v. *Mission Transfer Co.,* 95 Cal. 92 [30 P. 380] and in *Bourdieu* v. *Seaboard Oil Corp.,* 38 Cal.App.2d 11 [100 P.2d 528], 48 Cal.App.2d 429 [119 P.2d 973] and 63 Cal.App.2d 201 [146 P.2d 256], indicate that the owner of the oil and mineral estate is limited by the surface divisions and may place no further burdens upon each respective subdivision than is required to obtain the oil located under such particular subdivision. We do not so read these decisions. They appear to be logical applications, on the basis of their differing facts, of the general rule that property subservient to a particular use or profit may not be burdened to an extent greater than is reasonably necessary in order to allow the owner of the dominant right or tenement his full exercise thereof. (Civ. Code, § 806; 17 Cal.Jur.2d, Easements, § 27, p. 131, and cases cited; cf. *Kerr* v. *Brede,* 180 Cal.App.2d 149, 150-152 [4 Cal.Rptr. 443].)

In the *Dietz* case, *supra,* the owner of a tract of some 20,000 acres contracted to sell the property to the defendant therein subject, however, to an option previously given to the plaintiff.

The plaintiff did not exercise his option, but instead purchased 400 of the 20,000 acres with the oil and mineral rights reserved. Defendant *thereafter* was granted the remaining acreage and the oil and mineral rights in the 400 acres purchased by the plaintiff. The issue before the court was whether the defendant could use the surface of the 400 acres in furtherance of his operations on the entire tract or whether he was restricted in its use only to those operations which were conducted upon the 400-acre tract. Defendant asserted that said 400-acre tract was subject to the burden of the entire tract, because his contract antedated plaintiff's purchase, even though his grant did not. The court there stated that it could not agree with this contention and proceeded to explain its reasoning by reference to plaintiff's option which in turn antedated defendant's contract to purchase and the fact that defendant had elected to purchase the remaining acreage knowing that plaintiff had purchased the 400-acre tract and held the absolute title thereto ". . . with the exception of the oil, asphaltum, and other kindred mineral substances therein, and the right reserved to erect machinery, sink wells, etc., *on said tract.*" (*Dietz* v. *Mission Transfer Co., supra,* 95 Cal. 92 at page 97.)

This case, then, actually appears to hold against appellants' position in the instant case, for if it were of no consequence whether the plaintiff's ownership of the surface portion was created before or after the defendant acquired the oil rights in the entire 20,000 acres, including those reserved in plaintiff's 400-acre purchase, the court's statement of the facts and its reasoning would have been unnecessary.

The *Bourdieu* cases, *supra,* actually involve an interpretation of various federal statutes which are inapplicable in our proceeding, but in general result they likewise fail to lend support to appellants' position. It appears therein that the plaintiff had acquired various acreages under federal statutes for purposes of agriculture and stockraising. The government earlier had excepted the mineral rights from all grants of government lands and plaintiff therefor acquired his surface ownership subject to such exceptions. The defendant thereafter acquired the mineral rights in larger tracts which included the plaintiff's lands. It was held by the court that, under the terms of the federal statutes themselves, the defendant could not place facilities on plaintiff's lands for the purpose of serving his operations conducted elsewhere within his oil and mineral leasehold but beyond the boundaries of plaintiff's lands. Nothing therein appears which would be

authority for the proposition that a private landowner can sell his mineral and oil rights and transfer them by a deed containing no restrictions upon their use nor any provision for damages and thereafter, by subdividing the surface ownership, impair the rights and estates theretofore granted by him.

Respondents cite several decisions of other jurisdictions in support of their position. *Holt* v. *Southwest Antioch Sand Unit., Fifth Enlarged* (Okla.) 292 P.2d 998, seems to lend at least inferential support to respondents' arguments. *Richard* v. *Sohio Petroleum Co.*, 234 La. 804 [101 So.2d 676], also appears to declare and apply the rule for which respondents contend. However, these cases and the text and case material found in 4 Summers, Oil and Gas, section 652, although it deals principally with leasehold estates in the oil rather than fee or freehold estates therein, do provide us with a basis for stating the general and logical rule on the subject, and this rule is in no wise inconsistent with the holding in the *Dietz* case, *supra*.

The true rule is that (1) where the owner of a parcel of land sells a portion thereof reserving or excepting the oil and mineral rights therein, or where a person purchases the oil and mineral rights in a specific tract of land, the surface area of such lands may be subjected only to such burdens as are reasonably necessary to the full enjoyment of the mineral estate in such particular specific parcels and the surface area may not be burdened by installations or surface fixtures designed to serve oil producing facilities located without the parcels; but (2) the owner of the surface area in the parcel following such sales or transfers may not by any subsequent subdivision of the surface area deprive the owner of the oil and mineral estate of his rights in the entire parcel.

Further, each subsequent purchaser of a subdivision thereof, taking with notice of the prior sale and reservation of rights, takes knowing that his surface ownership may be burdened in part, and, in very rare cases perhaps, in its totality, by the reasonable exercise of the rights of the owner of the oil and mineral estate; and this without regard to whether or not the oil or mineral underlies the particular subdivision, or whether the facilities located thereon serve facilities located without the subdivision, so long as they do not lie beyond the original tract.

Under the admitted facts of the present case, it is therefore apparent that the original grantee of the oil and

mineral rights in the entire Rancho Santa Paula y Saticoy could have used any part of the surface area of the entire Rancho in connection with the placement of facilities required to exercise his rights therein. The subsequent subdivisions created on the surface could in nowise restrict his placement of such facilities to service of oil operations relating to that portion of his oil and mineral estate underlying each individual subdivision. Of course, the successors in interest to the entire estate of the original grantee would have equal rights free from such restrictions. ▇▇▇ Likewise the lessees of the present owners of the entire estate in the oil and minerals would have such rights in the entire Rancho as might be authorized by the owner in their respective leases. Such leases might cover only a portion of the surface area in which the owner of the oil and mineral estate has rights of user, and might contain restrictions and conditions designed to benefit the various surface owners over and above any restrictions or conditions that might be imposed by law on the oil and mineral owner in the reasonable exercise of his rights. But as to the rights thus acquired under their leases, the lessees cannot be further subjected to limitations such as those sought to be imposed by appellants herein. The ruling of the trial court in this respect was therefore correct. Appellants were not seeking a declaration of any rights they might have as third party beneficiaries or otherwise under the respective leases of the respondents, but, as indicated earlier, they asked the court the basic question concerning the effect of surface subdivisions upon the rights of the owner of the mineral estate.

▇▇▇ Appellants also challenge the correctness of the trial court's ruling in favor of respondents on one of their special defenses. Among other defenses, respondents asserted that a prior judgment between the predecessors in title of the parties to the instant action was res judicata. This earlier proceeding also involved a suit brought by a number of owners of surface subdivisions within the Rancho against the owner of the oil and mineral estate, at that time the Santa Paula y Saticoy Oil Company. The judgment provided:

"That defendant [oil company] is the owner in fee simple absolute and entitled to the possession of all the beds, deposits, lodes, veins and ledges of minerals of every description and all the petroleum and asphaltum situate *in, upon and within the said Rancho Santa Paula y Saticoy,*

in Ventura County, California, and *each and all of the parcels of land referred to in Plaintiffs' complaint,* together with all rights and privileges whatsoever necessary to give effect to such ownership with the exclusive right to explore, dig and sink wells, pits and shafts *upon said lands, and all thereof,* for the purpose of obtaining, extracting and appropriating such minerals and substances *wherever situate in and upon said lands,* with the right to erect houses for workmen and all buildings required for smelting, refining and working such minerals, petroleum and asphaltum, and that the plaintiffs have not, nor has any of them any estate, right, title or interest in or to the said property and rights so owned by defendant, and *that plaintiffs and each of them be forever enjoined and debarred from asserting any claim whatsoever in and to the property and property rights of defendant and from in any way interfering with the enjoyment by defendant of its ownership of use thereof. . . .*

"That the respective plaintiffs named herein are, and each of them is the owner of and in the possession of the remaining title and interest in and to that certain piece, and parcel of real estate situate in the County of Ventura, State of California, as hereinafter particularly set forth and described after each of said respective names of plaintiffs; *that said remaining right, title and interest in said lands owned and possessed by plaintiffs as aforesaid is exclusive of the defendant's said property and rights in the Rancho Santa Paula y Saticoy.* That the names of said respective owners, plaintiffs herein, and the pieces and parcels of land (the limited and qualified estate and interest wherein is owned by plaintiffs as aforesaid) are as follows: . . ." (Emphasis added.) Thereafter follow the name of appellants' predecessor and the legal description of property including that of appellants.

Obviously, such judgment would not be a bar to an action seeking to determine the rights and liabilities of the parties under the terms of leases made subsequent to the judgment, but, as heretofore indicated, this is not what appellants sought by this action. As defined in the pretrial order, the basic issue to be determined was the effect of surface subdivisions without regard to the terms of particular leases, and the answer to this question is a purely legal conclusion stemming from, and inherently contained in, the prior judgment, if, in truth, it can be said that the prior judgment did not provide the answer to the question upon its face.

Moreover, as heretofore indicated, the determination of the trial court would have been the same regardless of this special defense.

Appellants also assign as error the failure of the trial court expressly to state that the rights of respondents must be exercised in a reasonable manner. They assert that the effect of the judgment is to declare that respondents' rights to use the land are absolute, unlimited and unqualified. This assertion is entirely incorrect. The judgment provides only that respondents may exercise such rights as they have under their respective leases "unaffected and unlimited by divisions of surface ownership within" their leasehold estates. There is nothing therein to indicate any holding that respondents may engage in any unreasonable, arbitrary or capricious use of the surface or in any other fashion unreasonably to exercise the rights accorded them.

The law is clear that "[t]he grantee of the profit has a right to such possession of the surface as is *necessary and convenient* for the exercise of the profit, but he has no general estate in the surface." (*Dabney-Johnston Oil Corp* v. *Walden, supra,* 4 Cal.2d 637, 649.) (Emphasis added.) Reasonableness in the exercise of rights is a fundamental tenet of the law, whether in the field of real property or in the countless other areas of personal relationships. It is true also that the necessary and convenient use of the surface in the exercise of the profit "in fact may preclude any other surface possession," (*Callahan* v. *Martin, supra,* 3 Cal.2d 110, 122), but such a possibility is not even suggested by the factual considerations in the instant case. The trial court found, and appellants conceded, that respondents' exercise of their rights have been completely reasonable to date.

It is equally clear that, as conditions change, the "reasonableness" of any particular exercise of a right may also change. An act which would be reasonable in the wilderness might be totally unreasonable in an urban area. The owner of oil rights has a right to develop them, and the owner of the surface area has a right to develop that. Society has an interest in both such developments. Though the right of the owner of land subject to a prior oil and mineral estate is subordinate thereto, yet he may exercise and develop his rights of ownership to the fullest, even though this exercise may in some degree affect the rights of the oil and

mineral owner, so long as they do not prevent his enjoyment of his prior rights or unreasonably interfere therewith.

However, it does not follow from the fact that a particular development on the surface may affect the reasonableness of the oil and mineral owner's choice of location for a particular facility necessary to its operation, that the mere division of the surface area creates any such restriction. If a particular facility is necessary and convenient to the operations of the oil and mineral owner, it may be placed anywhere upon the surface area in which he has the right of user, so long as such placement is reasonable under prevailing conditions and even though such placement in particular instances may work a hardship on the surface owner. Certainly, the owner of the oil and mineral estate cannot be required to spread his facilities over a multiple division tract solely in order that a prorata burden must fall on each subdivision.

Conversely, no owner of a particular surface division could be heard to assert that the particular placement of a facility was unreasonable solely because it could have been placed elsewhere just as conveniently. Under the general guiding principles, a court may determine the issue of reasonableness in any given instance, and the court below in the present case rightly concluded that no unreasonable user had occurred to date.

Appellants' next assignment of error concerns the failure of the judgment to spell out appellants' rights as third party beneficiaries under the terms of the leases under which respondents are operating. As we have heretofore noted, these considerations were not a part of the issues framed by the pleadings or by the pretrial order. Further, respondents do not contend that they are not required under the provisions of their leases, to compensate the surface owners for damages resulting from their operations and hence there is no dispute upon which a declaration of rights was required. Finally, the judgment refers to these leases and cites the book and page of the county records where they were recorded. Hence, by no possible construction could the judgment be said to have eliminated any rights appellants may have thereunder.

Lastly, appellants cite as error the determination by the trial court that the transfer by the deed of 1864 of ''all the beds, deposits, lodes, veins and ledges of minerals of every description, and all the petroleum and

518

asphaltum'' included natural gas. We believe that the court was correct in applying the majority rule in the United States that a broad transfer of the mineral estate includes gas and oil, unless the contrary intent appears, and that the specification of oil is not alone an indication of an intention to exclude the natural gas that is of necessity produced therewith. (See 37 A.L.R.2d, p. 1440, et seq. and cases cited therein.)

Furthermore, assuming that the language were uncertain as to the intent of its apparent all-inclusive grant, the court received expert testimony which indicated that petroleum is a mixture of naturally occurring hydrocarbons which may assume either the solid, liquid, or gaseous state, that it may be converted from one state to another according to its environment, and that its state at any particular moment is dependent upon the degrees of heat and pressure to which it is subjected. Since gas and oil in place are inseparable and both are brought to the surface in drilling operations, the fact that the parties to the grant may not have mentioned ''gas'' by name, either because they were not concerned with its separate existence, or because they failed at that time to recognize its value, does not indicate an intent to exclude it from an otherwise all encompassing transfer. (Cf. *MacNicol* v. *East Coalinga etc. Corp.*, 22 Cal.2d 742, 750 [140 P.2d 793].)

The judgment is affirmed.

Ashburn, J., concurred.

Fox, P. J., being disqualified, did not participate therein.

Appellants' petition for a hearing by the Supreme Court was denied January 8, 1963.