MILDRED S. HURLEY, GARY D. HURLEY, MICHAEL D. HURLEY, JOHN JAMES HURLEY and STANLEY HURLEY, Plaintiffs and Respondents, v. NORTHERN PACIFIC RAILWAY COMPANY, a corporation, Defendant and Appellant.

No. 11527.

June 2. 1969.

Rehearing Denied June 13, 1969.

455 P.2d 321.

200

Crowley, Kilbourne, Haughey, Hanson & Gallagher, George C. Dalthorp (argued), Billings, for appellant.

Hughes & Barnes, Helena, Gene Huntley (argued), Baker, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by defendant railway company from an adverse judgment entered on a jury verdict in Fallon County district court.

The plaintiffs, Mildred S. Hurley, Gary D. Hurley, Michael D. Hurley, John James Hurley and Stanley Hurley, own the surface rights to Section 7, Township 8 North, Range 60 East, M.P.M. situate approximately seven miles north of Baker, Fallon County, Montana. The defendant owns the mineral rights on the same land.

In the summer of 1965 the defendant, Northern Pacific Railway Company, a corporation, determined to exercise its right

to the minerals under the land in question and caused an oil well to be drilled in section 7. Defendant also built or improved an access road to the drill site. The oil well produced oil and the defendant continues to occupy the well site and to use the road.

The plaintiffs at trial acknowledge that the defendant had a right under its mineral reservation to drill and produce the oil well. It was also agreed that the defendant used a total of 7.5 acres of the surface area for the road and well site and also that $30 per acre was the fair market value of the land at the time drilling operations commenced. The defendant conceded prior to trial that it owed the plaintiffs $225 for the land.

The dispute in this action is over whether the Hurleys are entitled to something over and above the $225 conceded to be owing by the defendant based on the mineral reservation providing in part that the Northern Pacific would pay "to the grantee, or to his heirs or assigns, the market value at the time mining operations are commenced of such portion of the surface as may be used for such operations or *injured thereby, including any improvements thereon.*" (Emphasis supplied.)

The issue here is whether there was sufficient evidence to sustain the jury's finding that a dam upon plaintiffs' land in essence and in fact, was completely destroyed as of the time of trial by the construction of a roadway across a portion of the dam's spillway. The plaintiffs' theory is that the construction of the road destroyed the dam, that the dam was the only source of usable water on the land, and that since there is no other source of usable water, the entire section has been reduced in value by $10 per acre. The plaintiffs also claimed damages of $225 for the land as well as $10 for cost of treating a horse injured on defendant's cattle guard and $5 for the removal of the cattle guard. The jury acceded to the plaintiffs' demands and awarded general damages of $6,640 for depreciation of the property, injury to the horse and removal of the guard. The jury also awarded $3,000 punitive damages.

The plaintiffs contended at the trial that the construction of the road to the drilling site across their spillway caused erosion to commence on the spillway at the point it drops into the creek, that the erosion is absolutely irreversible; that the erosion will, because it is irreversible, invariably work its way back to and destroy the dam; that since there is absolutely no way to halt the erosion the dam is, in essence and in fact, destroyed at the present time; and, that they should be compensated now for its destruction since its destruction reduces the value of the land by $10 per acre.

Defendant first contends that there is insufficient evidence to support the finding of complete and present destruction, and that the award of $10 per acre was purely speculative and conjectural.

This Court said in Jackson v. William Dingwall Co., 145 Mont. 127, 134, 135, 399 P.2d 236, 240:

"Actionable negligence arises only from a breach of a legal duty. Cassady v. City of Billings, 135 Mont. 390, 340 P.2d 509. The essential elements of actionable negligence are the existence of a duty, a breach thereof, and a resulting injury. McCoy v. Courtney, 25 Wash.2d 956, 172 P.2d 596, 600, 170 A.L.R. 603.

"To sustain a cause of action based on alleged negligence, the plaintiff must prove both negligence and proximate cause."

So far as duties are concerned in the instant case, it is "* * * well settled that the owner of the oil and mineral estate has a right to enter upon the surface of the property and make such use thereof as is reasonably required for the enjoyment of his estate therein * * *." Wall v. Shell Oil Company, 209 Cal.App.2d 504, 25 Cal.Rptr. 908, 911.

"If a particular facility is necessary and convenient to the operation of the oil and mineral owner, it may be placed anywhere upon the surface area in which he has the right of user, so long as such placement is reasonable under prevailing conditions and even though such placement in particular instances may work a hardship on the surface owner.

\*   \*   \*   \*   \*   \*   \*   \*

"*   *   *   no owner of a particular surface division could be heard to assert that the particular placement of a facility was unreasonable solely because it could have been placed elsewhere just as conveniently." Wall, supra, at p. 915.

What is reasonable will, of course, very with the circumstances of the particular case and the reasonableness of any particular exercise may also change. Wall, supra, at p. 915.

It is clear that the duty imposed on the defendant mineral owner was to act reasonably in using the surface while extracting its minerals. To show the defendant was negligent it must be shown that he did not act reasonably and did not make reasonable use of the surface area.

"Negligent conduct may be either:

"(a) an act which the actor as a reasonable man should recognize as involving an unreasonable risk of causing an invasion of an interest of another   *   *   *" 2 Restatement of Tort 2d, § 284.

Or as stated in a long line of California cases:

"It is well settled that one test for determining the issue of negligence is whether a person of ordinary prudence should have foreseen or anticipated that someone might be injured by his action or nonaction. 19 Cal.Jur. 583, 563-4; Shearman & Redfield on Negligence, § 24. Or as stated in different terms: 'Negligent conduct may be either: (a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another; or, (b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do.' Rest., Torts, § 284. And 'The actor should recognize that his conduct involves a risk of causing an invasion of another's interest, if a person, (a) possessing such perception of the surrounding circumstances as a reasonable man would have, or *such superior perception as the actor himself has,* and (b) possessing such knowledge of other pertinent matters as a reasonable man

would have or *such superior knowledge as the actor himself has,* and (c) correlating such perception and knowledge with reasonable intelligence and judgment would infer that the act creates an appreciable chance of causing such invasion.' Rest., Torts, § 289.'' (Emphasis supplied.) (Mosley v. Arden Farms Co., 26 Cal.2d 213, 216, 157 P.2d 372, 374, 158 A.L.R. 872.)

Further see Coats v. Chinn, 51 Cal.2d 304, 332 P.2d 289; Tucker v. Lombardo, 47 Cal. 2d 457, 303 P.2d 1041; Harris v. Joffe, 28 Cal.2d 418, 170 P.2d 454; Brandenburg v. Pacific Gas & Electric Co., 28 Cal.2d 282, 160 P.2d *909*; and Herrera v. Southern Pacific Co., 155 Cal.App.2d 781, 318 P.2d 784.

Also the question of whether probability of injury is reasonably foreseeable is ordinarily a question of fact for the jury. Herrera v. Southern Pacific Co., supra, at 787.

Mr. Earl J. Whitaker, supervising engineer for the defendant on the drilling operation testified he recognized the dam as an improvement on the property; that he knew a spillway ran from the dam to the creek; that he knew the location of the spillway; that he knew spillways were best where they maintain a gentle incline and have grass cover; and, knowing all of this he still put the access road across the spillway. Mr. Whitaker further testified that scoria was dumped on top of the grass of the spillway; no grass was cut or bladed up on the spillway; and, no equipment was turned in the spillway area. All this was done to leave the spillway as undisturbed as possible.

From Mr. Whitaker's testimony and also from his background, we feel the evidence was sufficient for the jury to find that the defendant by not cutting the grass on the spillway and in not turning equipment on it reasonably foresaw risk of harm to the spillway. We also feel the evidence was sufficient for the jury to find the defendant was negligent, i.e., acted unreasonably, in constructing the road across the spillway creating an unreasonable risk of harm. We think the evidence supports the jury finding of negligent breach of the duty owed the plaintiffs.

Section 93-301-4, R.C.M.1947, provides:

"The law does not require demonstration; that is, such a degree of proof as, excluding possibility of error, produces absolute certainty, because such proof is rarely possible. Moral certainty is only required, or that degree of proof which produces conviction in an unprejudiced mind."

Section 93-301-13, R.C.M.1947, provides:

"The evidence is deemed satisfactory which ordinarily produces moral certainty or conviction in an unprejudiced mind. Such evidence alone will justify a verdict. Evidence less than this is denominated slight evidence."

■ Also "* * * the rule that a verdict cannot be based on speculation and conjecture is too well established to require the citation of authority." McDonald et al. v. Royal Ins. Co., Ltd., 98 Mont. 572, 575, 40 P.2d 1005. See also Morton v. Mooney, 97 Mont. 1, 33 P.2d 262, and Fisher v. Butte Electric Ry. Co., 72 Mont. 594,. 235 P. 330.

■ Furthermore, when a judgment is assailed on the grounds of insufficiency of evidence to support the judgment, "* * * the rule is that, in order to sustain the judgment, the evidence must preponderate in favor of the findings on which it is based." Evans v. Silver Bow Motor Car Co., 96 Mont. 156, 163, 29 P.2d 381.

■ We do not think the plaintiffs have met the burden placed upon them by the rules set forth above, nor do we think the evidence preponderates in favor of the finding that the dam has been totally destroyed. The road across the spillway was constructed in the summer of 1965; the case came on for trial in February 1968. Testimony at the trial indicated that as of the time of trial a minimum of 260 feet of spillway existed between the dam and the point where the water drops off the spillway into the creek. While photographs introduced by plaintiffs showed erosion occurring at the point the spillway drops into the creek, other photographs introduced by the defendant

showed there was some erosion in the same place even before the road was laid across the spillway.

The plaintiffs relied on Mr. Bert Halmann as their expert witness to establish that the dam and spillway could never be saved since erosion had already commenced. Mr. Halmann, since 1951, had built over 30 dams, constructed several miles of roadways to drilling sites, repaired a number of dams with holes through their middles, and moved spillways out and built dams up. It is significant, however, that there was no evidence Halmann ever attempted to stop erosion of a spillway by any methods of repair suggested by defendant's expert, Mr. Tom Hardesty. In fact, in answer to a question as to whether he had ever filled in a spillway with rocks in order to prevent cutting back, Mr. Halmann replied: ''I have never done it.''

In our view the evidence does not preponderate in favor of the jury finding that the dam and spillway cannot be saved and that they are at the present completely destroyed. The judgment below must be reversed in so far as it awarded general damages for reduction in value of the property. We are not to be understood to be holding that the surface owner is forever precluded from recovering damages in the event that such damage is hereafter shown to have occurred by reason of the acts of the defendant, in other words, if erosion does actually damage or destroy the dam and spillway.

As to the award of punitive damages we have already commented that there was sufficient evidence to enable the jury to find the defendant acted unreasonably in the construction of the road and created an unreasonable risk of harm. There also was testimony that the proposed location of the access road was discussed by an employee of the defendant with one of the plaintiffs and from that conversation the impression was given that the road would go down the old section line, but thereafter and wihtout any further consultation another route was adopted, apparently one that was less expensive to construct and more convenient from the defendant's standpoint. Then too,

while not great in the amount of damage sustained, the installation of an inadequate and defective cattle guard which resulted in injury to one of plaintiff's horses is further indicative of defendant's disregard of plaintiff's rights in the premises and created further unreasonable risk of harm.

While defendant contends that this issue is controlled by our ruling in Westfall v. Motor Ins. Corp., 140 Mont. 564, 374 P.2d 96. Plaintiffs respond that the issue falls under the ruling in State ex. rel. Larson v. District Court, 149 Mont. 131, 423 P.2d 598. In view of the fact situation appearing in this record we agree with plaintiff's contention and therefore the award of punitive damages is sustained. The award of $225 for the taking of the 7.5 acres used for the road and drilling site should stand, and the award of damages for veterinary care for the horse and removal of the cattle guard must also stand.

The cause is remanded to the district court with directions to amend its judgment in these specified particulars and as so amended the judgment is affirmed.

MR. JUSTICES HASWELL, CASTLES, JOHN C. HARRISON and BONNER, concur.