Filed 2/3/16  Kern Water Bank Authority v. Grayson Service, Inc. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| KERN WATER BANK AUTHORITY,<br><br>Plaintiff, Cross-defendant and Respondent,<br><br>v.<br><br>GRAYSON SERVICE, INC.,<br><br>Defendant, Cross-complainant and Appellant. | F069806 & F070549<br><br>(Super. Ct. No. CV-275141)<br><br>**OPINION** |

APPEAL from a judgment and order of the Superior Court of Kern County. William D. Palmer, Judge.

Mahaffey Law Group, Douglas L. Mahaffey and Steven E. Paganetti for Defendant, Cross-complainant and Appellant.

Law Offices of Young Woolridge, Michael A. Kaia, Steven M. Torigiani and Jeffrey J. Patrick for Plaintiff, Cross-defendant and Respondent.

-ooOoo-

Appellant Grayson Service, Inc. (GSI), is a successor lessee under a 1936 oil and gas lease covering approximately 1,500 acres. Respondent Kern Water Bank Authority (Water Bank) is the current surface owner of the leased property. Crimson Resource Management (Crimson) is the current mineral owner and the successor lessor under the 1936 oil and gas lease.

At issue is a 23-acre parcel within the leased property. On this parcel, GSI has its corporate headquarters, various repair shops and storage areas, horse stables, and a horse track.

When the Water Bank's predecessor in interest, the State of California (State), was in the process of taking title to the property subject to the 1936 oil and gas lease, it objected to GSI's surface use of the 23 acres. To resolve this dispute, the State and GSI entered into a lease. The State agreed GSI could continue its occupancy of the surface of the 23 acres during the lease's term of up to 20 years. In exchange, GSI agreed to surrender its possession and occupancy of the 23 acres upon termination of the lease.

When the lease terminated, GSI refused to surrender possession and occupancy of the 23 acres. The Water Bank, as the successor lessor, filed the underlying action to enforce the lease terms. Following a bench trial, the trial court ruled in the Water Bank's favor and ordered GSI to surrender the 23 acres to the Water Bank.

On appeal, GSI argues that the Water Bank failed to prove that it has any surface rights to the 23-acre parcel. According to GSI, because the State did not have such surface rights, the State did not have any interest to lease to GSI. GSI further argues that, even if the lease between it and the State is valid, the trial court incorrectly interpreted that lease. GSI also argues that various procedural errors require reversal. Finally, GSI contends the trial court erred in awarding attorney fees.

2.

The trial court properly interpreted the subject documents, no prejudicial procedural errors occurred and the attorney fee award was appropriate. Accordingly, the judgment and order will be affirmed.

## BACKGROUND

The property at issue, including the mineral interests, was originally owned by the Kern County Land Company (KCLC).

In 1936, KCLC entered into an oil lease with the Ohio Oil Company (Ohio Oil) that permitted Ohio Oil to drill oil and gas wells on the property (1936 Lease). This lease granted Ohio Oil, as lessee, sole and exclusive possession of the land during the term of the lease except that KCLC, as lessor, reserved the exclusive use, control and possession of the land "for all purposes not inconsistent with the rights hereby granted to the Lessee, together with the full and free right to use or to lease for agricultural or grazing purposes, or any other purpose which shall not unnecessarily interfere with the operations of the Lessee upon the demised premises, all such portions of the demised premises as the Lessee does not actually employ in its operations on said premises." As noted above, GSI is a current assignee of the 1936 Lease.

Thereafter, KCLC changed its name to Tenneco West, Inc. (Tenneco West).

In July 1988, Tenneco West and the State entered into a contract for the sale of the property subject to the 1936 Lease. Tenneco West was to convey this property to the State, reserving only its mineral interests. However, before the transaction closed, the State's inspection revealed what the State considered a trespasser on a 23-acre parcel. That parcel contained multiple buildings, including horse stables and an auto repair shop. The alleged trespasser was identified as GSI. To expedite the closing, Tenneco West and the State amended the contract in August 1988 to delete this 23-acre parcel. They agreed that Tenneco West would use its best efforts to eliminate this trespass and that, upon completion of eviction and cleanup, Tenneco West would convey the 23-acre parcel to

3.

the State "under the same terms and conditions as the other property is conveyed under the agreement."

The deed transferring all but the 23 acres from Tenneco West to the State, with the reservation of Tenneco West's mineral interests, was recorded on August 31, 1988.

On November 16, 1988, Tenneco West assigned its reserved mineral interests in the property subject to the 1936 Lease, including the 23-acre parcel, to Tenneco Oil Company (Tenneco Oil). The assignment and conveyance states that Tenneco West is assigning "All fee interests; oil, gas and/or mineral interests; fee and other royalty interests; oil, gas and/or mineral leases and leasehold interests; … *in each case Insofar And Only Insofar as the same cover and include oil, gas and other liquid and gaseous hydrocarbons ... in, on or under the properties*." (Italics added.)

In January 1989, Tenneco West and Tenneco Oil amended the 1988 assignment and conveyance to clarify their intent. This amendment states that the italicized phrase quoted above "was intended to and does modify each of the series of interests previously listed" in that paragraph. In other words, despite using the term "all fee interests," the parties intended to only transfer Tenneco West's mineral interests to Tenneco Oil. The amendment also specified that the conveyance to Tenneco Oil was subject to "such rights of use and enjoyment of the surface of any Real Property located in Kern County" as set forth in the deeds from Tenneco West to "the Department of Water Resources, State of California, for the purpose of water storage and wildlife habitat enhancement."

In March 1990, Tenneco West transferred title to the 23-acre parcel to the State, subject to the oil, gas and/or mineral interest assignment and conveyance from Tenneco West to Tenneco Oil. At that time, Tenneco West had not evicted GSI as was contemplated by the amended 1988 sale contract. Rather, GSI and the State reached a compromise "to avoid costly litigation" and entered into a lease dated March 22, 1990, to settle their dispute (1990 Lease).

4.

The 1990 Lease began by reciting the parties' positions. The 1990 Lease noted that, while the State recognized that GSI had certain rights to use the surface of the property to operate its oil lease, the State did not agree with GSI's contention that GSI had rights under the 1936 Lease to conduct its business related to other oil leases at that location or conduct any other business not directly related to the operation of the 1936 Lease. The 1990 Lease further acknowledged that the State acquired title to the subject property from Tenneco West on March 22, 1990, "to be used primarily for the underground storage of water as a part of the Kern Water Bank, a unit of the State Water Project." The 1990 Lease additionally stated that "[w]hile both parties wish to preserve their legal positions, they desire to avoid costly litigation and are, therefore, entering into this lease to allow [GSI] to continue to operate his existing business on the subject property."

The term of the 1990 Lease was five years with GSI having an option to renew the lease annually not to exceed an additional 15 years. Thus, the 1990 Lease was to expire no later than March 22, 2010. During the lease term, GSI was to pay rent to the State.

GSI further agreed that upon expiration of the 1990 Lease, GSI would "peaceably surrender up the possession of the premises" to the State and "promptly execute, acknowledge and deliver to State a recordable quitclaim deed." The parties additionally agreed that, within 60 days after termination of the lease, GSI could remove any improvements so long as it could be done without damage to the land. However, any improvements not removed within that period were to become property of the State. Further, if not removed by GSI, the State would have the option of removing any improvements at GSI's expense.

In 1995 and 1996, the State's interest in both the property subject to the 1936 Lease, including the 23-acre parcel, and the 1990 Lease was transferred to the Water Bank. Also in 1996, Crimson acquired the mineral interest in the 23-acre parcel.

5.

In March 2009, the Water Bank notified GSI that the 1990 Lease would terminate on March 21, 2010, and that the Water Bank was not interested in leasing the property beyond that date. A second letter was sent to GSI on March 12, 2010, reminding it that the 1990 Lease required GSI to fully vacate the premises by March 21, 2010. GSI did not respond and did not vacate the 23 acres.

Thereafter, the Water Bank filed the underlying action against GSI. The first amended complaint alleged causes of action for declaratory relief, injunction, ejectment and restitution. At trial, the court permitted the Water Bank to amend its complaint to include a cause of action for specific performance.

Following a bench trial, the court issued its tentative statement of decision. The trial court ruled in the Water Bank's favor finding that the dispute was controlled by the 1990 Lease. The court directed the Water Bank to prepare a statement of decision and order.

GSI requested an additional statement of decision and identified 21 controverted legal issues. The trial court acknowledged receipt of this additional request and noted that the Water Bank was to prepare a statement of decision addressing "the 'principal controverted issues' as referenced in the tentative decision." The trial court opined that it appeared that GSI's "request far exceeds the letter and intent of the controlling statute."

The Water Bank filed a proposed statement of decision to which GSI submitted numerous objections. The trial court adopted and signed the proposed statement of decision without change and judgment was entered for the Water Bank.

**DISCUSSION**

1. *Substantive issues.*

   *a. The trial court correctly held that the 1990 Lease required GSI to vacate the property.*

The trial court concluded that the 1990 Lease controlled in this matter. The court noted that the terms of the 1990 Lease clearly and unambiguously demonstrated that the

parties intended to conclusively resolve their dispute as to who was entitled to occupy the 23 acres. The court further found the 1990 Lease required GSI to vacate the 23 acres and transfer its ownership interest to the Water Bank.

The fundamental goal of contract interpretation is to give effect to the mutual intent of the parties. (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390.) It is the objective intent of the parties, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls the construction. (*Berman v. Bromberg* (1997) 56 Cal.App.4th 936, 948.) Accordingly, if the contract language is clear and explicit, it governs. (*Powerine Oil, supra,* 37 Cal.4th at p. 390.) If there is any apparent conflict between the contract's different clauses or provisions, the circumstances surrounding its execution and the conditions and motives of the parties as shown by recitals in the contract should be taken into consideration to ascertain the true intent of the parties. (*Burch v. Premier Homes, LLC* (2011) 199 Cal.App.4th 730, 744.) Further, the contract language must be construed in the context of the instrument as a whole. (*Powerine Oil, supra,* 37 Cal.4th at p. 391.)

On review, this court is not bound by the trial court's construction of a contract where the trial court's interpretation is based solely on the terms of the written instrument without the aid of extrinsic evidence or there is no conflict in the properly admitted extrinsic evidence. (*Morey v. Vannucci* (1998) 64 Cal.App.4th 904, 913.) However, where the interpretation turns on the credibility of conflicting extrinsic evidence, this court will uphold any reasonable construction of the contract by the trial court. (*Ibid.*)

GSI argues that the provision of the 1990 Lease that requires GSI to surrender possession of the 23 acres upon expiration of the 20-year lease term conflicts with certain other provisions and therefore must be stricken to "harmonize the four corners of the document." According to GSI, the recitals in the 1990 Lease demonstrate that the parties intended merely to resolve their differences regarding GSI's activities that were not oil lease related, such as the horse stables.

7.

Contrary to GSI's contentions, the recitals do not differentiate between GSI's oil lease related and non-oil lease related activities. Rather, the recitals simply set forth the parties' respective positions regarding GSI's overall use of the property.

Recital B states that any rights GSI has to use the 23 acres stems from the 1936 Lease, commonly called "the Canal Oil Field lease." Recital C explains that while the State recognizes that GSI has certain rights to use the surface of the 23 acres to operate and service the Canal Oil Field lease, the State does not agree with GSI's contention that the lease "gives it a right to conduct its business at the location to operate or service any other oil field leases or to conduct any business operation on the subject property which is not directly related to the operation or servicing of the Canal Oil Field lease." Thus, recital C reflects the State's claim that GSI's use of the 23 acres was unreasonable. In other words, GSI was a trespasser. In recital E the parties acknowledge that the State acquired title to the 23 acres from Tenneco West to be used "primarily for the underground storage of water as a part of the Kern Water Bank."

Recital D sets forth the parties' reason for entering into the 1990 Lease. It states, "While both parties wish to preserve their legal positions, they desire to avoid costly litigation and are, therefore, entering into this lease to allow lessee to continue to operate his existing business on the subject property." The reasonable interpretation of this recital is that the parties intended to settle the dispute regarding the 23 acres by permitting GSI to continue to use the property without change but only during the term of the lease, i.e., for up to 20 years.

Further, GSI's argument that the parties intended the 1990 Lease to apply only to the activities unrelated to the 1936 Lease is contrary to clear and explicit language in the body of the 1990 Lease. Paragraph 20 provides, "Upon expiration of the term of this lease or its earlier termination, [GSI] shall peaceably surrender up the possession of the premises to State … and shall promptly execute, acknowledge and deliver to State a

8.

recordable quitclaim deed ....” There is nothing ambiguous in this provision. GSI agreed to surrender possession and vacate the entire 23 acres at the end of the lease.

The disposition of the improvements at the end of the lease term also supports finding that GSI is required to vacate the 23 acres. Paragraph 9 provides that, although the buildings and improvements on the 23 acres were to remain GSI's property while the 1990 Lease was in effect, and could be removed by GSI at the end of the lease term, any such improvements would become the property of the State if not removed. Thus, at the end of the 1990 Lease, GSI would no longer own the improvements left in place on the 23 acres.

GSI argues that paragraph 27 of the 1990 Lease controls its interpretation. That paragraph provides, “Execution of this lease shall not be construed as a waiver by either party of any rights, claims or contentions parties may have regarding [GSI's] right to use this property under” the 1936 Lease. According to GSI, the requirement that GSI surrender the 23 acres at the end of the lease term must be reconciled with paragraph 27 to allow for GSI's continued possession after the lease term under the 1936 Lease. GSI posits that the only way to do so is to strike paragraph 20.

However, GSI's interpretation of paragraph 27 is inconsistent with the parties' intent to settle the dispute as reflected in the recitals. Another interpretation, that is consistent with the general intent and purpose of the 1990 Lease, is that this non-waiver clause applied only during the term of the lease. Such an interpretation follows the rule that an alleged repugnancy must be reconciled, if possible, to give effect to both clauses. (*Jackson v. Donovan* (1963) 215 Cal.App.2d 685, 691.) Further, specific and explicit provisions, such as the requirement that GSI vacate the premises at the end of the lease term, prevail over general provisions, such as the non-waiver clause. (*Continental Cas. Co. v. Zurich Ins. Co.* (1961) 57 Cal.2d 27, 35.)

GSI further relies on the provision in paragraph 16 that, “In addition to being subject to all existing rights of others, this lease is subject to all existing easements,

servitude, licenses and rights of way for canals, ditches, levees, roads, highways, telephone, telegraph and electric power lines, railroads, pipelines and other purposes, whether recorded or not." However, at issue are the rights of GSI and the Water Bank, not the "rights of others." Thus, this general provision has no impact on the interpretation of the 1990 Lease.

GSI additionally argues that the reservation of the right to "drill for, produce, mine, extract and remove oil, gas and other minerals upon and from the premises" in paragraph 14 supports interpreting the 1990 Lease as applying only to its non-oil lease activities. GSI notes that, in general, a surface owner's right is subordinate to an oil and gas lessee and the surface owner may not interfere with the operation of the mineral estate. (*Cassinos v. Union Oil Co.* (1993) 14 Cal.App.4th 1770, 1780.) While GSI correctly states the general law, this clause does not alter the interpretation of the 1990 Lease. First, the paragraph states that these mineral rights "are reserved or owned by other parties." More importantly, by entering into this agreement with the State, GSI gave up any current rights it might have had to use the surface of the 23 acres when it agreed to vacate that property at the end of the lease term in exchange for the State's agreement to not pursue legal action to evict GSI from the property during the lease term.

### b. The Water Bank had title to the property.

As a defense to the Water Bank's complaint, GSI argued that the State, the Water Bank's predecessor in interest, did not have title to the 23 acres when it entered into the 1990 Lease and therefore did not have a legal basis for collecting rents from GSI for its surface use. On appeal, GSI argues that the Water Bank did not meet its burden of proving title in its case-in-chief and that the record does not support the trial court's finding that the Water Bank did in fact have fee title to the 23 acres.

The 1990 Lease states in recital E that "State acquired the title to the subject property from Tenneco West, Inc., on March 22, 1990, to be used primarily for the underground storage of water as a part of the Kern Water Bank …." When facts such as

10.

these are recited in a written instrument, they are conclusively presumed to be true as between the parties or their successors in interest. (Evid. Code, § 622.) Therefore, as between GSI and the Water Bank, the Water Bank is conclusively presumed to have title to the 23 acres.

Further, as discussed above, when GSI entered into the 1990 Lease with the State, GSI agreed to vacate the 23 acres and give up any rights it may have had in that property in exchange for the State's promise to not file an action to evict GSI during the term of the lease. Thus, the Water Bank's title to the 23 acres is irrelevant. GSI made a bargain that the Water Bank, as the State's successor in interest, was entitled to enforce. Nevertheless, the trial court's finding that the Water Bank had fee title to the 23 acres is supported by the record.

GSI argues that the Water Bank rested its case without proving title and therefore GSI is entitled to judgment. GSI further contends that the deeds offered by the Water Bank, starting with the July 1988 deed from Tenneco West to the State, were insufficient because the Water Bank had to prove who had title before that 1988 deed.

However, that July 1988 deed was the first time that the fee interest in the property had been transferred since it was acquired by the original owner, Tenneco West, previously known as KCLC. Only this fee interest is relevant to this case. The Water Bank is not making any claim to the reserved mineral interests. Thus, no deed earlier than July 1988 was required to prove the Water Bank's title.

Moreover, all relevant deeds in the chain of title are part of the record. GSI does not dispute this but contends that it was necessary for the Water Bank to offer all of these deeds during its case-in-chief. The documents at issue are the November 16, 1988, mineral interest assignment from Tenneco West to Tenneco Oil (exhibit 158) and the January 1989 amendment to the 1988 assignment clarifying the parties' intent (exhibit 159). According to GSI, the trial court erred in admitting these documents during the defense case.

11.

GSI's argument on this issue is somewhat misleading because GSI has omitted critical facts. When asked by the trial court, GSI's counsel stated he had no objection to the admission of the 1988 assignment from Tenneco West to Tenneco Oil. Further, the 1989 amendment to this assignment was offered into evidence by GSI's counsel. Accordingly, GSI has no reasonable basis for its claim on appeal that these documents were improperly admitted.

Despite the circumstances surrounding the admission of the 1988 assignment and the 1989 amendment, GSI argues that it "objected to this admissibility of [the Water Bank's] proffered deeds." However, GSI's citations to the record in support of this argument do not concern these documents. Rather, the record references all pertain to discussions or arguments regarding the litigation guarantee and chain of title guarantee prepared by a title company for the Water Bank.

GSI next argues that the litigation guarantee and chain of title guarantee proffered by the Water Bank were hearsay and inadmissible as valid proof of title. According to GSI, these guarantees were the Water Bank's only chain of title evidence and, even if admissible, failed to prove title because they did not address the 1988 assignment from Tenneco West to Tenneco Oil.

Contrary to GSI's position, the guarantees were not the only evidence of title. Rather, all of the title documents underlying the guarantees were part of the record. Thus, the litigation guarantee and chain of title guarantee were not required to prove title. Accordingly, assuming, without deciding, that the guarantees should not have been admitted, the error was not prejudicial.

Finally, GSI asserts that the title documents demonstrate that the Water Bank is not the fee owner of the 23 acres and therefore the trial court's contrary finding is incorrect. According to GSI, the 1988 assignment and conveyance from Tenneco West to Tenneco Oil transferred the fee interest in the 23 acres to Tenneco Oil. However, GSI has misconstrued these documents.

12.

As outlined above, in July 1988 Tenneco West entered into a contract for the sale of the real property subject to the 1936 Lease to the State. Pursuant to an amendment to this sale contract, Tenneco West conveyed this property, less the 23 acres occupied by GSI, to the State reserving "[a]ll oil, gas, and other hydrocarbons, and all other minerals." Thus, Tenneco West continued to own the minerals in the property deeded to the State and still owned all of the 23 acres. However, Tenneco West agreed that, once GSI was evicted from the 23-acre parcel, it would convey that parcel to the State "under the same terms and conditions as the other property is conveyed under the agreement."

A few months later, in November 1988, Tenneco West conveyed its mineral interest in the property subject to the 1936 Lease to Tenneco Oil. Recognizing that this conveyance contained an ambiguity, Tenneco West and Tenneco Oil executed and recorded the "First Amendment to Assignment and Conveyance" in January 1989. This amendment stated that the parties desired to "clarify" the assignment.

The ambiguity arose out of certain phrasing in the 1988 assignment and conveyance. This assignment provided that Tenneco West granted to Tenneco Oil "[a]ll fee interests; oil, gas and/or mineral interests; fee and other royalty interests; oil, gas and/or mineral leases and leasehold interests; … in each case Insofar And Only Insofar as the same cover and include oil, gas and other liquid and gaseous hydrocarbons," other elements in either liquid or gaseous form "and any other liquid or gaseous substances, inert or otherwise, or any of them, and any minerals or other substances produced in association therewith ('Hydrocarbons') in, on or under the properties."

Thus, although the November 1988 conveyance stated it was limited to oil, gas and other hydrocarbons, the use of the term "all fee interests" created uncertainty. Relying on this uncertainty, GSI argues that Tenneco West conveyed its entire interest in the 23 acres to Tenneco Oil and thus could not later convey any interest, including water extraction rights, in that 23 acres to the State.

The amendment to the assignment belies GSI's position.  The amendment states that the phrase "in each case" was "intended to and does modify each of the series of interests previously listed" in that paragraph of the assignment "including the phrase 'All fee interests.'"  In other words, the assignment pertains only to the mineral interests.  Therefore, Tenneco West retained the fee interest in the 23-acre parcel.

The amendment also added a paragraph to the assignment specifying that the assignment was subject to "such rights of use and enjoyment of the surface of any Real Property located in Kern County, California as are set forth in the deeds from [Tenneco West] to (i) the … State of California, for the purpose of water storage and wildlife habitat enhancement …."  These deeds were listed in an exhibit to the amendment.

GSI argues that, because the deed from Tenneco West to the State conveying the 23 acres was not listed, this amendment does not apply to that deed.  Therefore, GSI asserts, the State did not acquire any surface rights to the 23 acres.  However, that deed could not be listed because it did not yet exist.  More importantly, the amendment makes it clear that Tenneco West conveyed only its mineral interests to Tenneco Oil and retained the fee interest in the 23 acres.  Additionally, before it assigned the mineral interests to Tenneco Oil, Tenneco West promised to transfer the 23 acres to the State on the same terms and conditions as the transfer under the 1988 deed.  Both the 1988 deed and the 1990 deed from Tenneco West to the State expressly granted "all of [Tenneco West's] right, title and interest in and to all water and water rights, whether surface or subsurface, or of any other kind."  Therefore, the Water Bank, as the State's successor in interest, had title to the surface of the 23 acres, including water rights, when it entered into the 1990 Lease.

**2.** *Procedural issues.*

### a. The Water Bank had standing to pursue this action.

GSI argues the Water Bank failed to prove it succeeded to the lessor's interest in the 1936 Lease and therefore did not have standing to enforce the terms of the 1936

14.

Lease.  However, the Water Bank was not suing as the lessor under the 1936 Lease.  It has never claimed to own the mineral interests.  Rather, the Water Bank was seeking to enforce its rights as a party to the 1990 Lease.

Moreover, the Water Bank is the surface owner of the 23 acres.  The provisions in the 1936 Lease that limit the surface use of the 23 acres directly benefit the land and therefore are covenants that run with the land.  Thus, as the surface owner, the Water Bank is entitled to the benefit of those covenants and is entitled to enforce them.  (Civ. Code, § 1462; *Carlson v. Lindauer* (1953) 119 Cal.App.2d 292, 304-305.)

### b. The trial court did not violate Code of Civil Procedure sections 772.030 and 772.040.

Code of Civil Procedure section 772.030 permits the owner of a fee interest in the surface of land encumbered by an oil lease to bring an action to terminate the lessee's right of entry or occupation as to all or some described portion of the surface.  Code of Civil Procedure section 772.040 sets forth the conditions under which the court can enter a judgment terminating the lessee's right of entry or occupation of the surface.  Before the court can terminate this right, there must be evidence that the leasehold interest was created more than 20 years earlier and that the land is not presently occupied by a producing oil or gas well or well bore, a well or well bore "being utilized for injection of water … into geologic substrata as an aid to oil or gas production" (Code Civ. Proc., § 772.040, subd. (b)(2)), a well or well bore utilized for waste disposal, or a well or well bore producing water for use in oil field injection, waterflood, and pressure maintenance programs (*id.*, subd. (b)(3), (4)).  GSI argues the trial court violated both of these sections when it ordered GSI to surrender possession and vacate the 23 acres.

However, the Water Bank did not bring the action under Code of Civil Procedure sections 772.030 and 772.040.  Rather, the Water Bank filed suit to enforce GSI's promise in the 1990 Lease to vacate the 23 acres at the end of the lease term.  Accordingly, these two sections do not affect the resolution of this case.

15.

Moreover, the original lease was executed more than 20 years before the action was filed and GSI admitted that it had no producing oil wells on the 23 acres. GSI notes that it has a water well on the 23 acres but there is no evidence that this well is being used for oil production. Thus, as to GSI, the requirements of Code of Civil Procedure section 772.040 were met.

GSI notes that it has the right under the 1936 Lease to remove its abandoned well bore casings. While no specific ruling on this particular issue has been made, the 1990 Lease gives GSI the right to remove any improvements upon termination of that lease.

### c. The Water Bank did not seek adjudication of title.

GSI argues that the Water Bank was suing to quiet title. Based on this characterization, GSI points to two alleged procedural errors. GSI contends the trial court erred when it did not require the Water Bank to verify its quiet title complaint and when it did not declare GSI's rights regarding title to the property.

A quiet title action is akin to a declaratory relief action in that the plaintiff seeks a judgment declaring his or her rights in relation to a piece of property. The court examines and determines the plaintiff's title against the claims of the defendants. Thus, a quiet title action identifies and declares rights as distinct from a coercive action to enforce rights. (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 24.) To determine the nature of the claim, i.e., declarative or coercive, the court looks to the gist of the claim rather than its label. (*Id.* at p. 26.)

Here, the Water Bank did not seek to establish title to the 23-acre parcel as against GSI or any other person. Rather, the Water Bank filed its action to enforce the 1990 Lease and eject GSI from the property as a remedy for GSI's breach of that lease. Thus, the gist of the action was coercive, not declarative. Since the Water Bank did not file a quiet title action, the complaint did not need to be verified. Moreover, because the Water Bank is a public agency, there was no requirement that the complaint be verified. (Code Civ. Proc., § 446, subd. (a).) The trial court did not quiet title and therefore was not

16.

required to declare what property it quieted.  GSI raised the issue of the Water Bank's surface title to the 23 acres as a defense and the trial court made findings on this issue in the Water Bank's favor.  Thus, the trial court did not err as alleged by GSI.

### d. GSI's nonsuit motion was properly denied.

GSI contends its nonsuit motion should have been granted because the Water Bank did not prove surface title to the 23 acres and therefore failed to show any legal interest in the property in controversy.  However, as discussed in detail above, the Water Bank did have title to the surface of the 23 acres, including water rights.  Therefore, this argument fails.

### e. The trial court found that the Water Bank had title to the 23 acres based on the title documents.

GSI argues the trial court erred in relying on the 1990 Lease and Evidence Code section 622 to establish the Water Bank's title to the 23 acres.  As noted above, Evidence Code section 622 provides that facts recited in a written instrument are conclusively presumed to be true as between the parties to that instrument.  While GSI is correct that the trial court found that a recital in the 1990 Lease established the Water Bank's title as between the Water Bank and GSI, the trial court alternatively found that the various title documents entered into evidence established that the Water Bank held fee title to the 23 acres.

### f. Crimson is not an indispensable party.

If in a person's absence complete relief cannot be accorded among those already parties or that person claims an interest relating to the subject of the action, that person must be made a party to the proceeding.  (Code Civ. Proc., § 389, subd. (a).)  "'The controlling test for determining whether a person is an indispensable party is, "Where the plaintiff seeks some type of affirmative relief which, if granted, would injure or affect the interest of a third person not joined, that third person is an indispensable party.'"'"  (*Tracy Press, Inc. v. Superior Court* (2008) 164 Cal.App.4th 1290, 1298.)  Stated another way, a

17.

party is indispensable only when the judgment necessarily must affect its rights. (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 808.)

GSI argues that Crimson was an indispensable party. According to GSI, the judgment requiring GSI to surrender unqualified possession of the 23 acres to the Water Bank prevents Crimson from accessing its surface rights as the mineral owner.

Contrary to GSI's position, this action has no effect on Crimson's title or surface access. As the owner of the minerals, Crimson retains the right to use the surface of the 23-acre parcel as reasonably necessary to develop its mineral interest but has no general estate in the surface. (*Wall v. Shell Oil Co.* (1962) 209 Cal.App.2d 504, 516.) Thus, GSI's characterization of the 23-acre parcel as being "Crimson's land" is incorrect. Further, the judgment does not imply that the Water Bank can oust Crimson. Rather, this judgment merely enforces the agreement between GSI and the Water Bank requiring GSI to surrender possession of the 23 acres and improvements at the end of the lease term.

Additionally, this judgment has no effect on GSI's ability to produce oil from its operating wells, none of which are on the 23-acre parcel. An oil facilities and surface use expert testified that GSI's production would be unaffected by the loss of this parcel. Thus, there is no impact on the royalty payments Crimson receives from GSI.

In sum, neither the 1990 Lease nor this litigation affected any of Crimson's rights in the 23-acre parcel. Therefore, Crimson was not an indispensable party.

### g. The statement of decision was adequate.

GSI requested a statement of decision pursuant to Code of Civil Procedure section 632. In its request, GSI identified 21 legal issues that it believed to be controverted. GSI's request focused primarily on the chain of title to the 23 acres, the chain of title to the oil leases, and the rights of GSI under the 1936 Lease. GSI also questioned whether the court applied estoppel by contract. Regarding the 1990 Lease, GSI wanted the court to explain what rights were reserved to GSI under paragraphs 14 and 27 and what the impact was from recitals A and B. GSI later submitted 31 objections

18.

to the proposed statement of decision claiming that requested information was left out. GSI particularly objected to the lack of a determination of GSI's rights under the 1936 Lease.

A statement of decision is adequate if it fairly discloses the court's determinations as to the ultimate facts and material issues in the case. (*Central Valley General Hospital v. Smith* (2008) 162 Cal.App.4th 501, 513.) The trial court is not required to respond point by point to issues posed in a request for a statement of decision. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1314, fn. 12.) It need only address the substance of the matters raised by the request and sufficiently dispose of all the basic issues in the case. (*Bauer v. Bauer* (1996) 46 Cal.App.4th 1106, 1118.) The statement of decision is as much, or more, for the benefit of the appellate court as for the parties. "It 'is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law.'" (*In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, 1010.)

GSI argues reversal is required because the statement of decision made no reference to multiple controverted issues. However, these "controverted issues" are either irrelevant to the disposition of the case or were sufficiently disposed of. The litigation was between the Water Bank and GSI regarding the 1990 Lease. The statement of decision sufficiently analyzed the 1990 Lease and the parties' rights and responsibilities under that lease. The trial court further concluded that when GSI entered into the 1990 Lease, it knowingly agreed to modify its rights under the 1936 Lease as to the 23-acre parcel.

GSI also objects to the statement of decision's reference to the numerous deeds to prove title because that analysis was not part of the tentative decision. GSI additionally asserts that the departure from the trial court's legal and factual basis of the tentative decision indicates the trial court did not carefully read the proposed statement of decision. However, a tentative decision is not final. At any time before a judgment is entered, the

19.

court may amend or change the findings of fact and conclusions of law. (*Bay World Trading, Ltd. v. Nebraska Beef, Inc.* (2002) 101 Cal.App.4th 135, 141.)

GSI further argues that the statement of decision contains false or unsupported conclusions. However, these claims are based on GSI's disagreement with the trial court's interpretation of the title documents and contracts. As discussed above, the trial court's interpretations are correct.

### h. GSI waived a jury trial.

GSI argues it reserved its right to a jury trial on the legal issues. Therefore, GSI contends, the trial court committed reversible error by failing to try those issues to a jury.

Although GSI originally reserved its right to a jury trial on the legal issues, GSI thereafter waived a jury on all issues. The trial court specifically asked GSI's counsel "All right. The[n] Grayson, then, waives any claim that they might have to trial by jury on any of the issues; is that correct?" To which GSI's counsel responded, "Yes, Your Honor." This oral consent in open court constitutes a valid waiver of a jury trial. (Code Civ. Proc., § 631, subd. (f)(3).) Accordingly, no error occurred.

### 3. The trial court did not abuse its discretion in awarding attorney fees.

The Water Bank requested attorney fees as the prevailing party pursuant to Civil Code section 1717 in the amount of $566,930. The trial court awarded the Water Bank $396,031 in attorney fees finding that amount was reasonable for the work necessary to represent the Water Bank.

GSI argues it was error to award any fees to the Water Bank because the Water Bank failed to obtain a judgment of possession of the subject property. GSI further asserts that, even if permitted, the attorney fees were excessive.

### a. Standard of review.

The amount of an attorney fee award is left to the sound discretion of the trial court. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM Group*).) The experienced trial judge is the best judge of the value of professional services

20.

rendered in his or her court. Accordingly, while the judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong, i.e., that the trial court abused its discretion. (*Ibid.*)

The concept of abuse of discretion is not easily susceptible to precise definition. It has been enunciated in terms of whether the trial court exceeded the bounds of reason or was arbitrary or irrational. (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249.) In the context of an attorney fee award, reversal is proper only if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination. (*Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.) An appellate court is neither authorized nor warranted in substituting its judgment for the trial court and thus a decision will not be reversed merely because reasonable people might disagree. (*Maughan, supra,* 143 Cal.App.4th at p. 1249.)

### b. The Water Bank was the prevailing party.

GSI contends that the Water Bank was not the prevailing party on the contract and therefore cannot be awarded attorney fees. According to GSI, the Water Bank did not achieve its primary litigation objective because the trial court did not adjudicate GSI's right of possession under the 1936 Lease. GSI asserts that it has a valid oil and gas lease under which it has an exclusive right of possession of the 23 acres pursuant to the superior 1936 Lease.

As discussed above, this matter is controlled by the 1990 Lease. Under that lease, GSI gave up any rights it might have had to use the surface of the 23 acres after the end of the lease term. Thus, GSI's rights of possession under the 1936 Lease were irrelevant. GSI modified any rights it had to the surface of the 23 acres under the 1936 Lease when it entered into the 1990 Lease.

Further, contrary to GSI's position, the Water Bank did not sue as the lessor under the 1936 Lease. The Water Bank never claimed to own the mineral interests. Rather, the Water Bank was seeking to enforce its rights as the lessor under the 1990 Lease.

Civil Code section 1717, subdivision (a), requires the trial court to award attorney fees to the prevailing party "[i]n any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded." The party prevailing on the contract is "the party who recovered a greater relief in the action on the contract." (Civ. Code, § 1717, subd. (b)(1).)

The 1990 Lease provides "[GSI] shall pay all costs and expenses (including attorneys' fees in a reasonable amount) incurred by State to enforce any of the covenants, conditions and provisions of this lease, or to dispossess [GSI] and recover possession of the premises, irrespective of whether or not court action shall be brought."

The Water Bank filed this action to enforce the provisions of the 1990 Lease. The trial court ruled in the Water Bank's favor and ordered GSI to surrender possession of the 23-acre parcel, deliver a quit claim deed to the Water Bank, immediately vacate the 23-acre parcel and pay restitution to the Water Bank. The court further ordered that all buildings and improvements on the 23-acre parcel were the Water Bank's property. GSI took nothing on its cross-complaint. Thus, the Water Bank recovered the greater relief in the action and is the prevailing party. As the State's assignee of the 1990 Lease, the Water Bank is entitled to recover its attorney fees. (*Steve Schmidt & Co. v. Berry* (1986) 183 Cal.App.3d 1299, 1315-1317.)

### c. The trial court did not abuse its discretion in making the attorney fee award.

In determining what constitutes a reasonable attorney fee, courts should consider a number of factors including the nature of the litigation, its difficulty, the amount involved, the skill employed, the success of the attorney's efforts, the attention given, and other circumstances in the case. (*PLCM Group, supra,* 22 Cal.4th at p. 1096.) However, while an attorney fee award should ordinarily include compensation for all hours

22.

reasonably spent, inefficient or duplicative efforts will not be compensated. (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1321.) Nevertheless, as noted above, the amount of the fee is left to the trial court's sound discretion. (*PLCM Group, supra,* 22 Cal.4th at p. 1095.)

GSI argues the attorney fees were unreasonable and sets forth various reasons for its position. GSI first contends that the $396,031 award was excessive when compared to the rent GSI paid under the 1990 Lease. GSI notes that at $3,450 annually, the total rents derived from the agreement failed to exceed $100,000 over the 20-year term of the lease. However, the rent under the 1990 Lease was an insignificant part of the lease. The critical lease terms pertained to GSI's promise to vacate and surrender possession of the 23-acre parcel at the end of the lease term. Those are the terms that GSI adamantly refused to comply with and that the Water Bank sued to enforce. "'A defendant "'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'"'" (*Peak-Las Positas Partners v. Bollag* (2009) 172 Cal.App.4th 101, 114.)

GSI also objects to the Water Bank's counsel's use of block billing. Block billing occurs when the attorney assigns a block of time to multiple tasks rather than itemizing the time spent on each task. (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1010.) GSI argues that the block billing was vague and obscured the fee request. While such a billing practice may be penalized when it prevents the trial court from discerning which tasks are compensable and which are not, it is not objectionable per se. (*Christian Research Institute v. Alnor, supra,* 165 Cal.App.4th at p. 1325.) Here, there was no need to apportion the fees because all reasonable fees incurred in enforcing the 1990 Lease provisions were compensable. Thus, the use of block billing did not affect the reasonableness of the fee request.

GSI outlines other examples of what GSI asserts are unnecessary or inflated charges. GSI accuses the Water Bank's counsel of charging fees for duplicative work,

employing an excessive number of attorneys, and spending an unreasonable amount of time conferencing. According to GSI, the case was not complex and therefore the hours billed are patently excessive. GSI also notes that counsel failed to provide information on their background and experience to assist the trial court in determining reasonable fees. However, it is the experienced trial judge who can best determine the value of the professional services rendered in his or her court. (*PLCM Group, supra,* 22 Cal.4th at p. 1095.) It is a matter in which the trial court has its own expertise. (*Id.* at p. 1096.)

As noted by the trial court, GSI raised a number of issues and thus caused the case to become complex. As discussed above, many of these issues were irrelevant. The trial court concluded the approximately $396,000 it awarded represented the reasonable fees for the work necessary to represent the client. It is not appropriate for this court to substitute our judgment for the judgment of the trial court. The trial court neither exceeded the bounds of reason nor was arbitrary or irrational. The amount awarded does not shock the conscience or suggest that passion and prejudice influenced the decision.

Finally, GSI accuses the trial court of using inflated billing rates for the attorneys and awarding fees for non-recoverable clerical and secretarial work performed by a paralegal and a law clerk. The fee request did ask for higher billing rates than those actually charged and included fees for the paralegal and law clerk. However, the trial court awarded the amount the Water Bank incurred, $423,744, less the $27,713 charged for the paralegal and law clerk, for an award of $396,031. Thus, these accusations have no merit.

In sum, the trial court reviewed the fee request and awarded what it determined was appropriate based on the amount of work necessary to respond to GSI's numerous raised defenses and issues. The trial court did not abuse its discretion. The attorney fees award is neither clearly wrong nor does it exceed the bounds of reason.

## DISPOSITION

The judgment and order are affirmed.  Costs on appeal are awarded to respondent.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
FRANSON, J.


_____
SMITH, J.

25.